**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **DR. FORD ALBRITTON IV** | **Civil Action No. 3:16-cv-03340-M** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL** |
| **ACCLARENT, INC.,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.     BACKGROUND ................................................................................................2

II.    PLEADING STANDARDS................................................................................3

       A.     Motions to Dismiss Under Rule 12(b)(6) ...............................................3

       B.     Motions to Dismiss Under Rule 9(b)......................................................4

III.   ARGUMENT .....................................................................................................5

       A.     Plaintiff Sufficiently Pleads Its Claim for Breach of the
              NDA .........................................................................................................5

       B.     Plaintiff's Claims Are Not Barred by Any Statute of
              Limitations ...............................................................................................7

       C.     Plaintiff Sufficiently Alleged Claims for Fraud and
              Fraudulent Inducement .........................................................................10

              1.     Plaintiff has plead the "who, what, when, where and
                     how" of Acclarent's fraud.........................................................10

              2.     Plaintiff's fraud claim can be based on a promise
                     that is later subsumed in a contract.........................................13

       D.     The Complaint Sufficiently Alleges Claims for Patent
              Infringement...........................................................................................14

              1.     Plaintiff plausibly alleges direct infringement of
                     each limitation of more than one claim....................................14

              2.     Plaintiff has sufficiently pleaded indirect
                     infringement...............................................................................19

       E.     Alternatively, Plaintiff Requests Leave to Amend ...............................21

IV.    CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acclarent, Inc. v. Ford Albritton IV,*
  No. 5:16-cv-06919 (N.D. Cal. Dec. 1, 2016), ECF No. 1 ...................................3, 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................4, 17, 19

*Baker v. Putnal,*
  75 F.3d 190 (5th Cir. 1996) ...............................................................................3, 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................3, 4, 14

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
  343 F.3d 719 (5th Cir. 2003), *modified on other grounds,* 355 F.3d 356 (5th
  Cir. 2003) ........................................................................................................4

*Deston Therapeutics LLC v. Trigen Labs., Inc.,*
  723 F. Supp. 2d 665 (D. Del. 2010)..................................................................14

*Earle v. Ratliff,*
  998 S.W.2d 882 (Tex. 1999)............................................................................7, 8

*Global-Tech Appliances, Inc. v. SEB S.A,*
  563 U.S. 754 (2011)......................................................................................20, 21

*H-W Tech., L.C. v. Apple, Inc.,*
  2012 U.S. Dist. LEXIS 36764 (N.D. Tex. Feb. 23, 2012)...........................4, 14, 15

*Hart v. Bayer Corp.,*
  199 F.3d 239 (5th Cir. 2000) ..............................................................................21

*Hitt v. City of Pasadena,*
  561 F.2d 606 (5th Cir. 1977) ..............................................................................21

*InCom Corp. v. Walt Disney Co.,*
  2016 U.S. Dist. LEXIS 71319 (C.D. Cal. Feb. 4, 2016).......................................16

*InMotion Imagery Techs., LLC v. Imation Corp.,*
  2013 U.S. Dist. LEXIS 41830 (E.D. Tex. Mar. 25, 2013)....................................19

*Melder v. Morris,*
  27 F.3d 1097 (5th Cir. 1994) ................................................................5, 12

*Mullins v. TestAmerica, Inc.,*
  564 F.3d 386 (5th Cir. 2009) ......................................................................6

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,*
  2012 U.S. Dist. LEXIS 114199 (E.D. Tex. July 27, 2012)........................19

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)..................................................15

*In re Placid Oil Co.,*
  932 F.2d 394 (5th Cir. 1991) ......................................................................7

*Plotkin v. IP Axess, Inc.,*
  407 F.3d 690 (5th Cir. 2005) ......................................................................4

*Raindance Techs., Inc. v. 10x Genomics, Inc.,*
  2016 WL 927143 (D. Del. Mar. 4, 2016) .............................................18, 19

*Santanna Nat. Gas Corp. v. Hamon Operating Co.,*
  954 S.W.2d 885 (Tex. App. 1997)...............................................................9

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.,*
  170 F. Supp. 3d 928, 937 (E.D. Tex. 2016)...............................................20

*Sosa v. Coleman,*
  646 F.2d 991 (5th Cir. 1981) ......................................................................3

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,*
  365 F.3d 353 (5th Cir. 2004) ......................................................................4

*Tewari De-Ox Sys. v. Mountain States/Rosen, L.L.C.,*
  637 F.3d 604 (5th Cir. 2011) ......................................................................7

*Titanide Ventures, LLC v. IBM Corp.,*
  2012 U.S. Dist. LEXIS 163430 (E.D. Tex. Oct. 18, 2012) ................14, 15, 20

*Uniloc USA, Inc. v. Avaya Inc.,*
  2016 U.S. Dist. LEXIS 181826 (E.D. Tex. May 13, 2016)..................4, 15, 16

*United States v. Bollinger Shipyards, Inc.,*
  775 F.3d 255 (5th Cir. 2014) ......................................................................4

*Williams v. WMX Techs., Inc.,*
  112 F.3d 175 (5th Cir. 1997) ......................................................................4

*Wilmot v. Bouknight,*
    466 S.W.3d 219 (Tex. App.—Houston [1st] March 3, 2015) ..................................................3

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.068 ........................................................................................21

Acclarent's Motion to Dismiss (Dkt. 12) (the "Motion") ignores vast quantities of the Complaint and consistently raises the bar far beyond that required to sufficiently plead breach of contract, fraud, and patent infringement. Acclarent's Motion should be denied in full. First, Plaintiff's claims for breach of contract are sufficiently pleaded, because they allege that Defendant misappropriated confidential information from Plaintiff under the guise of a non-disclosure agreement. Acclarent's Motion is completely silent on the tactile feedback ideas that would not be in the public domain today but for Acclarent's misappropriation.

Second, Plaintiff's claims are not barred by the statute of limitations. Acclarent fraudulently concealed its bad acts from Plaintiff for years by affirmatively promising to protect Dr. Albritton's ideas while actively concealing the fact that it was taking Dr. Albritton's confidential information and incorporating it into both Acclarent's patent filings and its future products.

Third, Plaintiff's claims for fraud and fraudulent inducement are pleaded with the requisite particularity, stating in detail who defrauded Plaintiff, when and where the misrepresentations were made, and how they are false. The Complaint explicitly lists the who, what, when, where, and how of the fraud and fraudulent inducement claims.

Finally, Plaintiff's detailed patent infringement allegations satisfy the pleading standards. The Complaint includes 35 pages of detailed infringement allegations on a claim-element by claim-element basis, along with citations and excerpts from Acclarent's instructions for use and marketing literature. Acclarent's demand for more, particularly the early claim construction and infringement-contention level detail, should be rejected. Plaintiff therefore requests that Acclarent's Motion be denied; however, if necessary, Plaintiff requests the opportunity to amend its complaint rather than the death knell of dismissing the claims.

1

# I.     BACKGROUND

Plaintiff Dr. Ford Albritton IV ("Dr. Albritton") is a prominent ENT surgeon in Dallas, Texas. Defendant Acclarent, LLC ("Acclarent") is a medical device company that sells balloon sinuplasty devices for use by ENT surgeons. Unsatisfied with the devices on the market, Dr. Albritton began developing his own devices in 2006 and 2007. Hearing of these new innovations, Acclarent approached Dr. Albritton to learn more. Starting in 2007, under the protection of an NDA,[1] Dr. Albritton provided confidential information to Acclarent's representatives, in reliance on their promises to protect his new ideas.  In 2008, Dr. Albritton filed the provisional application that later matured into the patent-in-suit, U.S. Patent No. 9,011,412 ("the '412 Patent"), and he entered into a Consulting Agreement[2] with Acclarent shortly thereafter. The provisional application and the '412 Patent contain some, but not all, of the confidential information Dr. Albritton shared with Acclarent under the NDA and Consulting Agreement. Dr. Albritton continued working with Acclarent through 2015, and their relationship ended in 2016 after multiple attempts to license the '412 Patent.

Completely unknown to Dr. Albritton, Acclarent secretly pursued its own patent, which issued as U.S. patent 8,414,473 ("the '473 Patent"), during this same time frame. This Acclarent patent misappropriates and incorporates the ideas Dr. Albritton shared with Acclarent under the protections of the NDA and Consulting Agreement. Acclarent also incorporated Dr. Albritton's ideas into its Relieva devices that are currently sold on the market and disclosed Dr. Albritton's ideas to third party Ethicon before Ethicon acquired Acclarent in 2010.

---

[1] Ex. A to Plaintiff's Complaint (Dkt. 1-1 at 2).

[2] Ex. F to Plaintiff's Complaint (Dkt. 1-1 at 28). Contrary to Acclarent's assertions, the entirety of the Consulting Agreement is attached to Plaintiff's Complaint. *See* Dkt. 1-1 at 41-42.

In January 2016, after the relationship between Dr. Albritton and Acclarent was terminated, the parties entered into a Tolling and Standstill Agreement (the "Tolling Agreement"), which prevented either party from filing suit until December 1, 2016. During this time, the parties mediated the dispute to try to resolve their issues without court intervention. Acclarent declined to settle. On December 1, 2016, Acclarent filed its own lawsuit alleging breach of the Consulting Agreement and a declaratory judgment of non-infringement and invalidity of the '412 Patent in the Northern District of California. *See* Ex. A, Complaint, *Acclarent, Inc. v. Ford Albritton IV*, No. 5:16-cv-06919 (N.D. Cal. Dec. 1, 2016), ECF No. 1 (the "California Complaint"). In the California Complaint, Acclarent acknowledged the efficacy of the Tolling Agreement and pleaded that "[a]n immediate, real, and justiciable controversy exists between Acclarent and Albritton…" *Id.* at ¶ 8. However, recognizing Texas as the proper forum for this dispute, Acclarent voluntarily dismissed its California Complaint on December 2, 2016. Notice of Dismissal, *Acclarent, Inc.*, No. 5:16-cv-06919 (N.D. Cal. Dec. 2, 2016), ECF No. 2. Then it filed this Motion in an attempt to dismiss the action altogether.

## II.     PLEADING STANDARDS

### A.     Motions to Dismiss Under Rule 12(b)(6)

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). When considering a motion to dismiss under FRCP 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). To survive a motion to dismiss, a complaint need only

contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a 'probability requirement.'" *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678). Instead, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 545.

When considering a motion to dismiss claims of patent infringement, the Court should not weigh the evidence, perform claim construction, or require infringement contentions. *See H-W Tech., L.C. v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 36764, *13-15 (N.D. Tex. Feb. 23, 2012), *accepted by H-W Tech., L.C. v. Apple Inc.,* 2012 U.S. Dist. LEXIS 37009 (N.D. Tex. Mar. 19, 2012) (declining to construe patent claims at the motion to dismiss stage). *See also Uniloc USA, Inc. v. Avaya Inc.*, 2016 U.S. Dist. LEXIS 181826, *14 (E.D. Tex. May 13, 2016) (declining to elevate the plausibility standard for pleading patent infringement to a "probability standard").

### B.   Motions to Dismiss Under Rule 9(b)

The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). This standard has been analogized to the essential requirements of the

first paragraph of a newspaper article — the "who, what, where, when and how" of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## III.    ARGUMENT

Acclarent makes four main arguments in an attempt to delay adjudication of this dispute, which it has been aware of for nearly two years. First, Acclarent argues that Dr. Albritton's claim for breach of the NDA fails because the materials Acclarent misappropriated later became public.  Second, Acclarent argues that Dr. Albritton should have discovered Acclarent's bad acts sooner, and thus the statute of limitations bars Dr. Albritton's contract and fraud claims. Third, Acclarent argues that the Complaint lacks sufficient detail in its fraudulent inducement claim. Finally, Acclarent prematurely asks the Court to conduct a claim construction analysis of the '412 Patent and seeks dismissal of the patent infringement claims based on arguments more appropriately suited for summary judgment. Each of these arguments is meritless and should be rejected by the Court.

### A.    Plaintiff Sufficiently Pleads Its Claim for Breach of the NDA

Acclarent argues that Dr. Albritton's first breach of contract claim fails because the NDA does not protect information that later becomes public through the publication of a patent application. Dkt. 12 at 4-5. This is irrelevant to the issue. Acclarent ignores the Complaint's description of the tactile feedback mechanism that was not made public except through Acclarent's misappropriation and later publication in its '473 Patent:

> In addition to the features described in the Albritton Provisional Application, Dr. Albritton also disclosed to Acclarent his invention of a concept to provide better tactile feedback to a surgeon during insertion and advancement of the guidewire and/or balloon catheter. Dr. Albritton suggested improvements to the Acclarent equipment that would reduce points of friction and overcome shortcomings in their products at the time.

Information regarding Dr. Albritton's tactile feedback improvements was, at the time, a trade secret **had not been disclosed to the public or the U.S. Patent and Trademark Office**. Dr. Albritton shared this innovation with Acclarent in reliance on the NDA and/or Consulting Agreement **with the intent to keep it secret**.

Nevertheless, Acclarent misappropriated Dr. Albritton's confidential information and incorporated Dr. Albritton's tactile feedback improvements into its patent filings and products, later calling it the "Albritton-hole." See Ex. G at 25 ("Further, the user has direct access to the guidewire giving full tactile feel during advance and steering of the guidewire.").

¶¶ 34-36 (emphasis added). The central premise of Acclarent's argument—that the confidential information protected by the NDA was later published by Dr. Albritton—fails.[3] The protected material was not made public by Dr. Albritton.

Therefore, taking all facts in the Complaint as true, and drawing all inferences in favor of Dr. Albritton, it is clear that a cognizable claim remains for breach of the NDA. The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). The Complaint pleads that (1) the NDA is a valid and enforceable contract (Complaint at ¶ 51); (2) Acclarent breached the NDA by disclosing Dr. Albritton's confidential information, including his novel tactile feedback mechanism (Complaint at ¶¶ 36, 45, 54); Dr. Albritton performed under the terms of the NDA by providing services to Acclarent (Complaint at ¶¶ 17, 21, 52); and (4) Dr. Albritton suffered damages as a result of Acclarent's improper disclosure (Complaint at ¶¶ 35, 55). Acclarent's breach includes disclosure of Dr. Albritton's tactile feedback mechanism, which is confidential

---

[3] Plaintiff notes that Acclarent does not make a similar argument regarding breach of the Consulting Agreement. Thus, survival of the breach of the Consulting Agreement claim rises and falls with the statute of limitations argument detailed below in Section B.

information protected by the NDA and Consulting Agreement. As a result, Plaintiff has sufficiently pleaded facts for breach of contract that survive a motion to dismiss. *Baker v. Putnal*, 75 F.3d at 196 (Court must accept all well-pleaded facts as true).

### B.     Plaintiff's Claims Are Not Barred by Any Statute of Limitations

Acclarent argues that all of Dr. Albritton's breach of contract and fraud claims are barred by the statute of limitations. Dkt. 12 at 2-4, 6-7, 10-12. The sole basis for Acclarent's statute of limitations argument is the filing of an Acclarent patent application in 2008 and its subsequent publication in 2010. Dkt. 12 at 2, 6, 11, 12.[4] In particular, Acclarent suggests that this case is not the "rare case" where Dr. Albritton could not have discovered his injuries in 2010. Dkt. 12 at 3. This is incorrect. Throughout the parties' relationship, Acclarent actively worked to conceal its bad acts from Dr. Albritton. It is disingenuous to now claim that Dr. Albritton *should have known* about these bad acts sooner.

Under Texas law, fraudulent concealment is an affirmative defense to the statute of limitations. To rely on fraudulent concealment, "[t]he plaintiff must prove that the defendant had actual knowledge of the facts allegedly concealed and a fixed purpose to conceal the wrong." *In re Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir. 1991). Fraudulent concealment may be proven through circumstantial evidence and "suspends the running of limitations until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999). As alleged in the

---

[4] Although Acclarent suggests that the statute began to run in 2008 upon filing of the patent application, it also concedes that Dr. Albritton could not have discovered this patent application until it was published in 2010. Any suggestion that Dr. Albritton's claim began to run in 2008 is without merit because patent applications remain secret until published. *Tewari De-Ox Sys. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604 (5th Cir. 2011) (patent applications are published after 18 months and then are no longer secret).

Complaint, Acclarent had knowledge that it had misappropriated Dr. Albritton's confidential information as early as 2008, and yet it actively concealed this from him. Complaint at ¶¶ 87, 85.

Dr. Albritton has shown precisely that. Acclarent had actual knowledge that it misappropriated Dr. Albritton's confidential information, and it purposely hid these actions to cause Dr. Albritton to continue his relationship with Acclarent and continue providing his confidential information to Acclarent. This allowed Acclarent to continue misappropriating Dr. Albritton's ideas for incorporation into Acclarent's own patents and products. More specifically, as alleged in the Complaint, before 2010, Acclarent and Dr. Albritton were working together under the guise of the NDA and the Consulting Agreement. Complaint at ¶¶ 17, 24, 34, 41. Acclarent's engineer Serena Swei had represented to Dr. Albritton that he would be named as a co-inventor on any patent applications filed by Acclarent covering devices he helped develop. *Id.* at ¶ 21. Acclarent also promised that Dr. Albritton would own his pre-existing inventions. *Id.* at ¶ 23. In March 2009, Acclarent employee Greg Garfield told Dr. Albritton that Acclarent had filed for a patent on a "new and unique guide with suction," but not that the patent application was based on Dr. Albritton's confidential information. *Id.* at ¶ 43. No one at Acclarent told Dr. Albritton that his confidential information was being used for these purposes, and thus he was unaware of Acclarent's breaches and continued to work with Acclarent. *Id.* at ¶¶ 41, 83. As a result, the statute of limitations is suspended until Dr. Albritton learned or should have discovered Acclarent's deceitful conduct. *Earle*, 998 S.W.2d at 888.

Acclarent's claim that Dr. Albritton should have discovered Acclarent's breach sooner rings hollow. "Texas courts have long adhered to the view that fraud vitiates whatever it touches, and have consistently held that a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress

within the limitations period." *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App. 1997). Acclarent intentionally misled Dr. Albritton and concealed its fraudulent and breach of contract acts from him. Acclarent argues that Dr. Albritton should have discovered its bad acts when the Acclarent patent application was published, but Acclarent had assured Dr. Albritton it was not using his innovations in its patent applications. Complaint at ¶¶ 43-44. Acclarent and Dr. Albritton continued working together up through 2015, and at no point did Acclarent reveal its conduct or the existence of the '473 Patent to Dr. Albritton. Acclarent therefore cannot avail itself of the statute of limitations when it prevented Dr. Albritton from discovering the wrong in the first place.

Moreover, Acclarent's assertion that Dr. Albritton should have known the content of the '473 Patent application's publication imposes an unduly high standard. According to Espacenet.com Patent Search database, 103 worldwide Acclarent patent applications were published from 2008 to 2014. Acclarent's suggestion that Dr. Albritton should have searched through each of these publications despite Acclarent's representations to him would defeat the purpose of the parties' contractual agreements. Further, Acclarent's argument would require a judgment as to Dr. Albritton's reasonableness, which is inappropriate at this stage.[5]

Lastly, to the extent Acclarent argues Dr. Albritton should have nevertheless discovered Acclarent's bad acts sometime after January 2012, the Tolling Agreement acts to toll the statute of limitations. Acclarent does not dispute the relevance of the Tolling Agreement, mentioning it repeatedly in its Motion.[6] Acclarent also acknowledged the effect of the Tolling Agreement in its

---

[5] "Determining what a reasonable person would have done or should have known are normally questions of fact." *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 892 (Tex. App. 1997).

[6] *See* Dkt. 12 at 2 ("Plaintiff alleges that the NSA was breached in 2008, more than eight years before the filing of the Complaint, or even the execution of the parties' Tolling Agreement."); 7

California Complaint. *See* California Complaint at ¶¶ 23-24 ("On or about January 14, 2016, Albritton and Acclarent entered into a tolling and standstill agreement, in which the parties agreed to refrain from litigating the '412 Patent until December 1, 2016… The parties' tolling and standstill agreement has expired."). After ratifying the Tolling Agreement in its own pleadings and by filing suit on December 1, 2016, Acclarent cannot now—and has not attempted to—claim that the Tolling Agreement did not toll any relevant statutes of limitations. There is no justification to bar Dr. Albritton's claims based on statutes of limitations.

### C.    Plaintiff Sufficiently Alleged Claims for Fraud and Fraudulent Inducement

In addition to the statute of limitations, Acclarent offers two arguments in support of its motion to dismiss Dr. Albritton's fraud claims: (1) the Complaint fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b); and (2) failure to perform a contract is not evidence of fraud.  Acclarent is mistaken on both counts.

### 1.    Plaintiff has plead the "who, what, when, where and how" of Acclarent's fraud.

Acclarent argues that the Complaint does not identify the speaker of fraudulent statements, the when and where the statements were made, or explain why the statements were fraudulent. Dkt. 12 at 9. This is false.

The Complaint sets out the detailed factual history of the parties' relationship and the specific misrepresentations made by certain Acclarent employees. For example, the Complaint states that on May 11, 2008, Acclarent employee Ryan Clark approached Dr. Albritton, acknowledging Dr. Albritton's invention of a device combining suction in a guide catheter. Complaint at ¶¶ 18-19. Mr. Clark stated that Acclarent wanted to incorporate Dr. Albritton's

---

("Plaintiff's claim for breach of the Consulting Agreement accrued over eight years before the filing of the Complaint, and even execution of the parties' Tolling Agreement.").

design in its "next generation Guide Catheter," and asked Dr. Albritton to consult with Acclarent's lead design engineer, Serena Swei ("Swei").  Complaint at ¶ 19; Ex. B. Dr. Albritton agreed. *Id.* at ¶ 21.

On May 19, 2008, Acclarent began to defraud Dr. Albritton.  During a phone call held that day, Swei assured Dr. Albritton that if he would assist Acclarent in improving its guide catheter devices, he would be named as a co-inventor on any patent applications that were filed covering devices he helped develop. *Id.* Acclarent, through Swei, made this representation to Dr. Albritton, knowing that it was false. *Id.* at ¶¶ 26, 71. At the time, Acclarent not only intended to take advantage of Dr. Albritton's expertise while denying him recognition as a co-inventor, but it also intended to use its access to Dr. Albritton to misappropriate his already-existing intellectual property. *Id.* This is demonstrated by Acclarent's conduct during the subsequent negotiations with Dr. Albritton regarding his Consulting Agreement as recited in the Complaint and repeated below.

On May 28, 2008, Acclarent sent Dr. Albritton a draft consulting services agreement regarding Dr. Albritton's services and consultation on several specified Acclarent products. Complaint at ¶ 21, Ex. E. At the time, Acclarent had already acknowledged Dr. Albritton's inventions in its internal emails. *See id.* at ¶ 19, Ex. B. In its draft agreement, Acclarent attempted to include a provision that would give Acclarent a royalty-free license to Dr. Albritton's pre-existing inventions. *See id.,* Ex. E at 2-3. However, Dr. Albritton rejected Acclarent's attempt to take his intellectual property, striking the license provisions from the draft consulting agreement. *Id.* at Ex. F.

Following these negotiations, Acclarent sent Dr. Albritton a final Consulting Agreement in which Acclarent agreed that it would not receive a license to Dr. Albritton's existing

inventions and represented that it would not use any of Dr. Albritton's confidential information for its own purposes or disclose his confidential information to a third party. Complaint at ¶ 62. The Consulting Agreement also included Swei's promise that Dr. Albritton would be credited as a co-inventor on any inventions he helped to create. *Id.* at ¶ 72; Ex. F. Dr. Albritton executed the Consulting Agreement on December 18, 2008. *Id.* at ¶ 23. Greg Garfield ("Garfield"), Acclarent's Chief Operating Officer, also executed the Consulting Agreement. Complaint, Ex. F.

The Complaint even summarizes specific misrepresentations Acclarent made to induce Dr. Albritton to enter into the agreements:

Further, when negotiating the Consulting Agreement in late 2008, Acclarent:

a. accepted Dr. Albritton's amendment to the original draft agreement deleting provisions that would have given Acclarent a royalty-free license to Dr. Albritton's pre-existing inventions;

b. represented that Dr. Albritton would own his own pre-existing inventions; and

c. represented that Acclarent would not disclose Dr. Albritton's inventions or other confidential information to third parties.

Complaint at ¶ 72. When Clark, Swei, and Garfield made the misrepresentations listed above on behalf of Acclarent, they knew that Acclarent had no intention of honoring its promises. *Id.* at ¶ 71. Further, they made these misrepresentations with the intent that Dr. Albritton would enter into the agreements with Acclarent and begin sharing his confidential information. *Id.* Dr. Albritton did in fact begin sharing his confidential information with Acclarent, and Acclarent misappropriated this information to Dr. Albritton's detriment. *Id.* at ¶¶ 24-27, 80.

The Complaint therefore sufficiently lays out the "who, what, when, where, and how" of the fraudulent inducement. *Melder*, 27 F.3d at 1100 n.5. Both the allegations in the Complaint, which must be assumed true at this stage, and the exhibits attached to the complaint meet the standards imposed by Rule 9(b). Acclarent's argument to the contrary should be rejected.

**2.      Plaintiff's fraud claim can be based on a promise that is later subsumed in a contract.**

Acclarent also argues that "mere failure to perform a contract is not evidence of fraud." Dkt. 12 at 8 (citing *Formosa Plastics*).  While true, this is not what the Complaint alleges. The very next sentence in *Formosa Plastics* shows what is necessary to prove fraud or fraudulent inducement: the plaintiff must "present evidence that [Defendant] made representations with the intent to deceive and with no intention of performing as represented." *Formosa Plastics* at 48. In other words, that defendant "had no intent to operate in the manner called for in the [agreement]." Complaint at ¶ 73. The Complaint demonstrates that Acclarent "intended to use the Consulting Agreement to misappropriate Dr. Albritton's inventions, and incorporate the innovative features created by Dr. Albritton in its 'next generation Guide Catheter,' and file a patent application covering Dr. Albritton's confidential information." *Id.* The Complaint therefore meets the standard as recited in *Formosa Plastics*.

In addition, a fraud (or fraudulent inducement) claim is not precluded where a defendant enters into an agreement while knowing that it contains misrepresentations of material fact. The *Formosa Plastics* court "has also repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, **irrespective of whether the promise is later subsumed within a contract**." 960 S.W.2d 41 (emphasis added).  S*ee also Wilmot v. Bouknight*, 466 S.W.3d 219, 229 (Tex. App.—Houston [1st] March 3, 2015) ("Texas courts have long held that when one party enters into a contract with no intention of performing that misrepresentation may give rise to action in fraud.") (citing *Formosa Plastics*). Here, it is clear from the allegations in the Complaint that Acclarent never had the intention to honor its obligations to Dr. Albritton, and in fact was defrauding him throughout the parties' relationship.

**D.      The Complaint Sufficiently Alleges Claims for Patent Infringement**

**1.      Plaintiff plausibly alleges direct infringement of each limitation of more than one claim.**

Acclarent also argues that the Complaint does not state a claim for direct infringement, citing *Iqbal* and *Twombly*. Dkt. 12 at 12-23. At its core, Acclarent's motion asks the Court to engage in early claim construction and fact finding to rule that no infringement claim has been pleaded. Acclarent's Motion fails for three reasons: (1) it improperly requires the Court to engage in claim construction; (2) it improperly requires infringement-contention level detail in the Complaint; (3) it incorrectly suggests that a dispute as to infringement is grounds for granting a motion to dismiss.

First, now is not the time for the Court to engage in claim construction and then use that as a basis to dismiss the Complaint. *See, e.g.*, *H-W Tech., L.C. v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 36764, at *13-15 (holding that an attempt to gauge patent claims' scope and meaning without an adequate development of the record would be an exercise in speculation); *Titanide Ventures, LLC v. IBM Corp.*, 2012 U.S. Dist. LEXIS 163430, *11 (E.D. Tex. Oct. 18, 2012) (claim construction should only occur after both parties have had the opportunity to propose their claim construction definitions and submit their claim construction briefs—not on a motion to dismiss). *See also Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665, 670-72 (D. Del. 2010) (citing a litany of district court decisions holding that the claim construction process is unsuited for a motion to dismiss).

In its Motion, Acclarent identifies two "Disputed Limitations" that it asserts preclude direct infringement. Dkt. 12 at 13. Acclarent's construction of the so-called "Disputed Limitations"—which differs from Dr. Albritton's construction—may be relevant at a later stage of this litigation, but it is not proper at the motion to dismiss stage. However, that a plaintiff and

14

defendant offer contradictory interpretations of a patent's claims means the claims are ripe for construction, not that plaintiff's infringement allegations are not plausible. *See H-W Tech., L.C.*, 2012 U.S. Dist. LEXIS 36764 at *12 ("claim construction is a matter of resolution of disputed meanings and technical scope…for use in the determination of infringement.").

Perhaps most telling of Acclarent's premature attempt at claim construction is its reliance on a figure from the provisional application that later became the '412 Patent to support its construction of the Disputed Limitations. Dkt. 12 at 13, 22. Not only is it improper for Acclarent to construe the Disputed Limitations at this stage, but it even commits a cardinal sin of patent law when doing so. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (en banc) (attempting to read limitations from a patent's specification into the claims of the patent is the "cardinal sin" of patent law). Granting Acclarent's Motion would require construing at least the terms "adapted," "manipulate," "portion," "substantially," "handle opening," and "working device," as these are the phrases Acclarent disputes are practiced by its Relieva devices. The Court should not indulge Acclarent in this exercise. *See H-W Tech., L.C. v. Apple, Inc.*, 2012 U.S. Dist. LEXIS 36764, at *13-15; *Titanide Ventures, LLC v. IBM Corp.*, 2012 U.S. Dist. LEXIS 163430 at *11.

Second, the *Iqbal/Twombly* standards do not require infringement-contention level detail at the pleading stage. *See Uniloc*, 2016 U.S. Dist. LEXIS 181826, at *14 (noting that well-established local rules facilitate detailed disclosure of infringement contentions, which are "much more than a 'short and plain statement'" as required by Rule 8). Here, preliminary infringement contentions are due ten days after the initial case management conference, which has not yet been set. Northern District of Texas Misc. Order No. 62, 3-1. And, in any event, the Complaint provides a claim-element by claim-element explanation of how the claims of the '412 Patent are

infringed, laid out in over 35 pages with citations to Acclarent's instructions for use and marketing materials. This is more than sufficient to survive a motion to dismiss. *See InCom Corp. v. Walt Disney Co.*, 2016 U.S. Dist. LEXIS 71319, *8 (C.D. Cal. Feb. 4, 2016) ("Plaintiff has stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as Plaintiff's patented system.").

Third, a dispute as to infringement does not support granting a motion to dismiss. *See Uniloc*, 2016 U.S. Dist. LEXIS 181826, at *21 (noting that while an accused product may have a substantial non-infringing use, it is not the province of the court to resolve such factual disputes at the motion to dismiss stage). Indeed, it suggests that the Complaint provides a sufficient level of detail for Acclarent to understand the infringement allegations. Like the plaintiff's complaint in *Uniloc*, Dr. Albritton's Complaint identifies specific Accused Products that practice the asserted patent claims. The Complaint also describes the accused functionalities and supports these allegations with "numerous publicly available illustrations, which further describe the accused products and functionality." *Id.* at *14.

Acclarent's "Disputed Limitations" are not only addressed in the Complaint, but are analyzed in light of actual features of the Accused Products. Acclarent's Motion acknowledges that the Complaint identifies five features of the Accused Products that implicate the "Disputed Limitations." Dkt. 12 at 14. In addition to the allegations Acclarent identifies, Dr. Albritton's specific allegations relevant to the "Disputed Limitations" include:

- The Relieva Devices are configured to allow a user to control a position of the guide catheter using the handle that is formed to allow the position of the guide catheter to be **controlled by some or all of three fingers of a hand**, while substantially simultaneously **manipulating the working device with a thumb and index finger of the hand** via a portion of the working device immediately adjacent to the handle opening. For example, the Relieva Spin marketing material

states that the **device offers "single-handed control" and "complete control in one hand,"** as shown below. The Relieva SpinPlus marketing literature also describes "singlehanded control" and **"balanced positioning to rest in one hand"** as shown below. (Complaint at ¶ 107) (emphasis added);

- The Relieva Devices allow a position of the guide catheter to be controlled by **some or all of three fingers of one hand** of the user. As shown above, the Relieva Spin marketing material further states that the **device offers "single-handed control" and "complete control in one hand."** The Relieva SpinPlus marketing literature notes also describes "single-handed control" and **"balanced positioning to rest in one hand"** as shown below. (Complaint at ¶ 113) (emphasis added).

The Complaint provides sufficient explanation of how the Accused Products practice the asserted claims, including practicing the "Disputed Limitations." As alleged in the Complaint and demonstrated in Acclarent's own materials, the Relieva Devices contain a handle structure and a guide catheter, which can be controlled by some or all of three fingers of a hand, including a thumb and index finger. Complaint at ¶ 97, 98, 107. While the "Wire Spinner and Wire Slider" are described in Acclarent's promotional materials as "an elongated thumb wheel to easily gain thumb purchase," the "Balloon Slider," another moveable component of the working device, is never described as "available only to the thumb," as Acclarent claims. Dkt. 12 at 17. Rather, consistent with the product's claim to provide "complete control in one hand," the Balloon Slider can be manipulated by the thumb *or* index finger. So too can the thumb or index finger be used to stabilize, balance, or move the device. And these facts must be accepted as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. at 664 (quoting *Twombly*, 550 U.S. at 570).

Acclarent also cites to the images below, which serve to illustrate how the Accused Products can be operated in an infringing manner (with a thumb and index finger of the same hand, as described in Claims 1, 8, and 11 and alleged in the Complaint).

17







Compl., Ex. C at 4-5, Fig. 5                                 Ex. H at 1 [Dkt. 1-1 at 110]

[Dkt. 1-1 at 17]

Thus, Acclarent's own Motion highlights the similarities between the '412 Patent and the infringing Relieva devices.

Acclarent's cited cases do not compel dismissal. In *Scripps*, the plaintiff failed to even address certain claim limitations in its complaint and did not provide any factual support for its contention that the defendant's products practiced those limitations. *Scripps*, 2016 WL 6834024, at *17. Contrary to *Scripps*, Dr. Albritton's Complaint addresses each asserted claim limitation with both factual allegations and illustrations supporting its contentions. In *Atlas IP, LLC v. Exelon Corp.*, the court found that the plaintiff's second amended complaint failed to allege facts about each element of the asserted claim. 2016 U.S. Dist. LEXIS 64571, at *13 (N.D. Ill. May 17, 2016). Conversely, the Complaint here contains express factual allegations tying each asserted claim limitation to the accused product, and cites to Acclarent's own literature as evidence. And in *Raindance*, the court suggested that plaintiffs had filed suit too quickly, without adequately researching the Accused Products, and without tying factual allegations to the

18

asserted claims. *Raindance Techs., Inc. v. 10x Genomics, Inc.*, 2016 WL 927143, at *4, *6 (D. Del. Mar. 4, 2016). Here, in contrast, Count Five of the Complaint (direct infringement of the '412 Patent) spans over 35 pages, consisting of 32 detailed paragraphs and dozens of images from Acclarent's own marketing materials paired with specific infringement allegations tying the claims of the '412 Patent to the features of the Accused Products. The Complaint goes above and beyond the requirements of Rule 8(a) and plausibly states Dr. Albritton's claim for infringement.

### 2. Plaintiff has sufficiently pleaded indirect infringement.

Lastly, Acclarent asks the Court to dismiss Dr. Albritton's indirect infringement claims for failing to show (1) direct infringement, (2) that Acclarent induces the infringing acts, and (3) that Acclarent knew the acts it induced constituted infringement. Dkt. 12 at 19.

The law is clear that a plaintiff "need not prove [his/her] inducement case at the time of filing." *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, 2012 U.S. Dist. LEXIS 114199, at *18 (E.D. Tex. July 27, 2012); *see also, e.g., InMotion Imagery Techs., LLC v. Imation Corp.*, 2013 U.S. Dist. LEXIS 41830, at *16 (E.D. Tex. Mar. 25, 2013) (noting that pleading requirements do not require a plaintiff to "prove itself at the pleading stage") (citations omitted). Rather, a plaintiff must only "state a claim that is plausible on its face," such that the Court—viewing all facts in a light most favorable to the plaintiff, and drawing reasonable inferences in favor of the plaintiff—could infer the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663-64 (internal citations and quotations omitted).

First, the Complaint alleges sufficient facts to prove direct infringement as detailed in Section D.1. above. The Complaint contains 32 detailed paragraphs and dozens of citations to Acclarent's own marketing materials, paired with specific infringement allegations explaining how the Relieva devices infringe each claim element of the '412 Patent.

19

Second, the Complaint sufficiently alleges that Acclarent possessed the requisite knowledge and intent for induced infringement. *See Global-Tech Appliances, Inc. v. SEB S.A*, 563 U.S. 754, 760 (2011). *See also Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) (finding plaintiffs sufficiently pleaded induced infringement by alleging defendants instructed customers in advertising and promotion to use the products in an infringing way); *Titanide Ventures*, 2012 U.S. Dist. LEXIS 163430, at *11 (holding plaintiff's allegation that defendant advertised the infringing product on its website and gave instructions on how to use it was sufficient to raise a reasonable inference of intent at the pleading stage). The Complaint specifically identifies the features and components of the Accused Products that infringe the asserted claims, and supports the indirect infringement claims by alleging:

> Acclarent's affirmative acts of selling the Relieva Devices, causing the Relieva Devices to be manufactured and distributed, and providing marketing materials, labeling, package inserts, a website, and other promotional materials encourage, aid, instruct, and cause the public, including doctors and other health care professionals, to use the Relieva Devices in a manner that infringes the claims of the '412 Patent. Acclarent performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '412 Patent and with the knowledge or willful blindness that the induced acts would constitute infringement. (Complaint at ¶ 125).

> Acclarent had actual notice of the provisional and non-provisional applications that became the '412 Patent, by June 6, 2008, at the latest, when Acclarent entered the Consulting Agreement with Dr. Albritton. (Complaint at ¶ 130).

> Acclarent had actual notice of the '412 Patent, as issued, by April, 2015 at the latest, when Dr. Albritton notified Acclarent that his patent covered his surgical catheter device that can, among other things, be operated with a single hand. (Complaint at ¶ 131).

Dr. Albritton's inducement allegations are straightforward and sufficient. Dr. Albritton pleaded that Acclarent has knowledge of the asserted patent (Complaint at ¶ 130-131), that certain functionalities of the accused Acclarent products infringe the patent (Complaint at ¶ 94-

116), and that Acclarent instructs customers how to use the accused Acclarent products in an infringing manner, specifically by "providing marketing materials, labeling, package inserts, a website, and other promotional materials [to] encourage, aid, instruct, and cause the public, including doctors and other health care professionals, to use the [Accused Acclarent Devices] in a manner that infringes the claims of the '412 Patent." Complaint at ¶ 125. The use of instruction manuals and product guides is precisely the type of "affirmative step" required to establish induced infringement. *See, e.g., Global-Tech*, 563 U.S. at 760. The Complaint's indirect infringement allegations are therefore sufficient to survive a motion to dismiss.

### E.    Alternatively, Plaintiff Requests Leave to Amend

Leave to amend should be granted unless it is clear that the complaint cannot be cured. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (a court should not dismiss a claim under Rule 9(b) without granting leave to amend "unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (complaint challenged under Rule 12(b)(6) should be afforded "every opportunity for the plaintiff to state a claim upon which relief can be granted."). In the event that Acclarent's Motion raises matters of concern for the Court, Dr. Albritton requests leave to address any such issues in an amended complaint.[7]

### IV.    CONCLUSION

For the reasons set forth above, Dr. Albritton requests that Acclarent's Motion be denied in its entirety. Alternatively, Dr. Albritton requests leave to amend the Complaint.

---

[7] If Dr. Albritton were to file an amended complaint, any amended pleading would relate back to the Complaint filed on December 1, 2016, and Dr. Albritton's claims would not be barred by any applicable statutes of limitations. Fed. R. Civ. P. 15; Tex. Civ. Prac. & Rem. Code § 16.068.

Dated: February 13, 2017.

**McKool Smith, P.C.**

/s/ *Ashley N. Moore*

Ashley N. Moore
Texas State Bar No. 24074748
amoore@McKoolSmith.com
Travis E. DeArman
Texas State Bar No. 24074117
tdearman@McKoolSmith.com
Meredith Elkins
Texas State Bar No. 24084584
melkins@McKoolSmith.com
**McKool Smith, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044


ATTORNEYS FOR Plaintiff
DR. FORD ALBRITTON

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served electronically on all counsel of record via the Court's ECF system on February 13, 2017.


*/s/ Ashley N. Moore*
Ashley N. Moore