# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **DR. FORD ALBRITTON IV**, | § |
| Plaintiff, | § § § |
| | § **Civil Action No. 3:16-cv-03340-M** |
| v. | § |
| **ACCLARENT, INC.**, | § § § |
| Defendant. | § **JURY TRIAL** |
| | § § § § |

**DEFENDANT ACCLARENT, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

By ignoring arguments in the Motion to Dismiss ("Mot.") that it cannot overcome, and relying instead on mischaracterizations of the Motion, Complaint, and applicable law, Plaintiff's Opposition (Dkt. 17) ("Opp'n") confirms that the Court should grant Acclarent's Motion to Dismiss. Plaintiff's lack of diligence dooms his contract and fraud claims under the statute of limitations. And as to Plaintiff's patent infringement claim, the Opposition ignores limitations raised in the Motion, rebuts arguments that Acclarent never made, and relies on outdated cases to argue that the Court is not entitled to consider the plain meaning of the claims.

The flaws in Plaintiff's Complaint are fatal, and any attempt to cure them would be futile. Accordingly, this Court should grant the Motion in its entirety and deny Plaintiff's request for leave to amend the Complaint.

**ARGUMENT**

**I.    The statute of limitations bars the breach of contract and fraud claims**

Plaintiff incorrectly states that the "sole basis for Acclarent's statute of limitations argument is the filing of an Acclarent patent application in 2008 and its subsequent publication in 2010." Opp'n 7. For the breach of contract claims, Plaintiff's statement ignores Acclarent's argument that the Complaint, on its face, alleges breach of the NDA and Consulting Agreement beginning in 2008. Mot. 2-3, 6-7. Because contract claims accrue upon breach, Plaintiff's own allegations confirm that any contract claims accrued in 2008, and the four-year statute of limitations expired in 2012, before execution of the 2016 Tolling Agreement. Thus, to survive a motion to dismiss the breach of contract claims, Plaintiff must sufficiently plead one of the two tolling exceptions available under Texas law: fraudulent concealment or the discovery rule. *See In re Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir. 1991) ("fraudulent concealment and the discovery rule procedurally and substantively are distinct concepts.") Plaintiff has not done so.

As to the fraud claims, although Acclarent does rely on the publication of the '473 patent application, because the statute of limitations begins when "the fraud is discovered or the exercise of reasonable diligence would discover it," the statute of limitations bars Plaintiff's claim because of Plaintiff's failure to exercise reasonable diligence in discovering the '473 patent application. *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 57 (Tex. 2015).

### A.  Plaintiff fails to plead fraudulent concealment with particularity

Plaintiff raises fraudulent concealment against all of Acclarent's statute of limitations defenses. Opp'n 7. However, fraudulent concealment only "allows the statute of limitations to be tolled for causes of action besides fraud itself." *Hooks*, 457 S.W.3d at 58 n.9. Moreover, Rule 9(b) requires fraudulent concealment to be plead with particularity.

The crux of Plaintiff's fraudulent concealment argument is that "[n]o one at Acclarent told Dr. Albritton that his confidential information was being used" improperly. Opp'n 8. The Complaint fails to plead with particularity, however, why such a duty to disclose existed. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 98 (Tex. 2004) ("mere silence is not fraudulent unless there is a duty to disclose").

### B.  Fraudulent concealment cannot toll statute of limitations indefinitely

Plaintiff attempts to excuse his delay in bringing suit by placing the blame on Acclarent, paying no more than lip service to his duty of reasonable diligence. But Plaintiff's own cited cases make clear that "*even if there is fraudulent concealment by the defendant*, the plaintiff is required to act with diligence in seeking to discover fraud after being put on inquiry." *In re Placid Oil Co.*, 932 F.2d at 399 (emphasis added). Accordingly, "fraudulent concealment does not extend the statute of limitations indefinitely," rather, it "merely defers the statute of limitations until the plaintiff learns or in the exercise of reasonable diligence should have learned of the facts that give rise to its cause of action." *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885,

891 (Tex. App. 1997).

Thus, even if Acclarent had fraudulently concealed the facts giving rise to these claims, the statute of limitations necessarily begins to run when Plaintiff, exercising reasonable diligence, should have learned of the facts giving rise to the causes of action at issue. It follows that the breach of contract and fraud claims rise and fall depending on when the exercise of reasonable diligence would have discovered the facts underlying these claims.[1]

### C. Plaintiff could have reasonably discovered the facts underlying these claims in 2010

Plaintiff does not meaningfully dispute Acclarent's position that reasonable diligence would have discovered the published '473 patent application (and the facts underlying these causes of action) in 2010. Plaintiff's argument on this dispositive issue consists of a single paragraph beginning with the unsupported premise that Acclarent's position "imposes an unduly high standard." Opp'n 9. But as a matter of law, publication of a patent application provides constructive notice to those practicing and patenting in that field. *See, e.g.*, *Wang v. Palo Alto Networks, Inc.*, No. 121-05579, 2014 WL 1410346, at *6-9 (N.D. Cal. Apr. 11, 2014) ("surely publication of patents (and now patent applications) must be deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications in the same field on full notice of all of the contents of the publication."); *WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009) ("it is not unreasonable to expect that Ion would examine the public records published under the PCT").

In this case, Plaintiff cannot reasonably dispute he had constructive notice of the '473

---

[1] Because the tolling resulting from fraudulent concealment ends when reasonable diligence would have uncovered the claim, and the statute of limitations for fraud begins when reasonable diligence would have discovered it, the analysis for both the breach of contract and fraud claims collapse into this single question. *Hooks*, 457 S.W.3d at 58 n.9.

3

patent application because he plead all of the facts necessary to charge him with constructive notice as a matter of law. Plaintiff alleges he is "an innovator in the field of nasal and sinus surgery for over a decade" and that he prosecuted patents relevant to the field of the '473 patent application, e.g., the '412 patent that Plaintiff now accuses Acclarent of infringing. Compl. ¶¶ 11, 20. Plaintiff further alleges he was familiar with protecting his intellectual property rights. *See id*. ¶ 13 ("Recognizing the importance of protecting his innovation and before discussing any technical details, Dr. Albritton requested that Acclarent enter into the NDA.").

Although Plaintiff asserts that the number of "worldwide Acclarent patent applications" published 2008 to 2014 undermines Acclarent's position regarding reasonableness, the Complaint contains no allegations regarding the number of such applications. Opp'n 9. This improper reliance on facts outside the Complaint (and thus irrelevant to this Motion) confirms the deficiencies in Plaintiff's position. Nevertheless, Plaintiff asserts that requiring him to "search through each of these" published worldwide Acclarent patent applications—i.e., exercise reasonable diligence—"defeat[s] the purpose of the parties' contractual agreements." *Id*. But Texas courts have held that because "[c]ontracting parties are generally not fiduciaries . . . due diligence requires that each protect its own interests." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)). Thus, the "parties' contractual agreements" cannot excuse Plaintiff's lack of diligence.

Moreover, Plaintiff exaggerates the effort needed to discover the facts underlying his belated causes of action. While searching all of Acclarent's published patent applications would have been reasonable in view of the cited authority, the Complaint demonstrates Plaintiff could have timely uncovered the '473 patent application with little to no effort.

Specifically, Plaintiff alleges he provided Greg Garfield with the purportedly confidential

4

information underlying the present causes of action on June 11, 2008. Compl. ¶ 25. Plaintiff then alleges that on March 31, 2009, in response to Plaintiff's email "regarding a license to his pending '412 Patent," Mr. Garfield replied "recently, we have also developed another new and unique guide with suction, for which we recently filed an additional patent application," and "declined to take a license" to any patent rights from Plaintiff. *Id.* ¶¶ 42-44; Ex. J at 1-3 [Dkt. 1-1 at 117-19]. Given these circumstances, a person exercising reasonable diligence would have asked Mr. Garfield for the application referenced in his email, and/or searched for Acclarent patent applications published during the 18 months (the time it takes for patent applications to publish) following Mr. Garfield's email, reviewing ones matching the description in the email. *See Via Net*, 211 S.W.3d at 314 ("Due diligence may include asking a contract partner for information needed to verify contractual performance.") This necessarily would have uncovered the '473 patent application published April 22, 2010.

Finally, Plaintiff contends that any judgment of his reasonableness is inappropriate at this stage. However, reasonableness can be determined as a matter of law in circumstances such as the ones here, i.e., readily accessible publicly available information and a knowledgeable plaintiff. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928-29 (Tex. 2011) (reasonable diligence required plaintiff to consult "publicly available records at the Texas General Land Office (GLO)" and "prices listed in the publicly-available El Paso Permian Basin Index"); *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). These Texas oil and gas decisions accord with the *Wang* and *WesternGeco* patent decisions cited above.

*Wang* is particularly relevant, because it distinguished decisions finding that issues of fact remained as to reasonableness from its own facts, where it was "crystal clear here that the contents of the [published] patent application revealed the alleged trade secrets in question." *Wang*, 2014

WL 1410346, at *6-7. Likewise, it is "crystal clear here" that the contents of the published '473 patent application underlie Plaintiff's claims at issue, because Plaintiff pleads exactly that. Compl. ¶¶ 26-34, 64, 76, 82-83.

## II. It is undisputed that breach of the NDA cannot rely on information in the '412 patent

Plaintiff argues that its breach of the NDA claim includes information outside the '412 patent, but does not dispute that information contained in the '412 patent cannot give rise to breach of the NDA. Opp'n 5-6. Thus, if the Court does not dismiss this claim on statute of limitations grounds, it should be dismissed to the extent it relies on information in the '412 patent. *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. 15-1720, 2015 WL 7281618, at *7 (E.D. La. Nov. 16, 2015) (plaintiff "may not pursue a breach of contract claim premised on [defendant's] use of information that is contained in its patent applications").

## III. Plaintiff has not properly plead fraudulent inducement under Rule 9(b)

On fraudulent inducement, the Opposition mischaracterizes both Acclarent's Motion and the Complaint itself. First, Acclarent asserts Rule 9(b) only against fraudulent inducement, not fraud. Second, Plaintiff now contends that what the Complaint expressly described as "material misrepresentations . . . to induce Dr. Albritton to sign the NDA and later, the Consulting Agreement" (Compl. ¶¶ 69, 72) *are not actual statements* but rather mere "summari[es]" of "specific misrepresentations" allegedly made by Acclarent. Opp'n 12. By so arguing, Plaintiff admits that it did not plead its fraudulent inducement claim with particularity as Rule 9(b) requires. Under Plaintiff's characterization of the Complaint, the reader must guess which "specific misrepresentations," if any, are summarized.

Regardless, nothing alleged by the Complaint could have fraudulently induced Plaintiff to enter into the NDA, because the NDA was executed on June 12, 2007, and Plaintiff alleges May 19, 2008 as the date "Acclarent began to defraud Dr. Albritton." Opp'n 11. Thus, Plaintiff's claim

6

of fraudulent inducement as to the NDA fails as a matter of law. *See Brown v. Joseph Cory Holdings, LLC*, No. 4:13-cv-044-Y, 2014 WL 12585674, at *6 (N.D. Tex. June 30, 2014) (dismissing fraudulent inducement claim when alleged misrepresentations occurred after plaintiff entered into contract).

As to the Consulting Agreement, Plaintiff relies on "Acclarent's conduct" during contract negotiations, and a statement allegedly made by Serena Swei on May 19, 2008. Opp'n 11. But Plaintiff never specifies who participated in those contract negotiations, except alleging that Mr. Garfield executed the Consulting Agreement. Opp'n 11-12. This is insufficient as a matter of law. *See Wright's Well Control Servs.*, 2015 WL 7281618, at *12 ("While [plaintiff] does vaguely refer to a negotiation period, it does not specify who was involved in the negotiations, what was said, or when and where the key discussions took place.")

Ms. Swei's alleged statement fares no better because, according to the Complaint, it only caused Plaintiff to "continue[] working with Acclarent and advising Acclarent's engineers on how to improve their devices," but it did not induce Plaintiff to execute the Consulting Agreement. Compl. ¶ 21; *cf. United States ex rel. Richardson-Eagle, Inc. v. Marsh & McLennan Cos.*, No. H-05-0411, 2005 WL 3591014, at *6-7 (S.D. Tex. Dec. 30, 2005) (fraudulent inducement claim dismissed when complaint did not state plaintiff would not have entered into contract but for the fraud).

**IV.   Plaintiff fails to state a claim for direct patent infringement**

Plaintiff raises three arguments against dismissal of its direct patent infringement claim. First, Plaintiff argues that *any* claim construction is premature, relying on decisions before the December 1, 2015 abrogation of Rule 84 and the Appendix of Forms. Opp'n 14-15. Plaintiff's cited cases apply an out-of-date standard. Acclarent's cases—which apply the correct standard—hold the exact opposite, e.g., that a plaintiff was "entirely incorrect in stating that claim

7

construction cannot be engaged in at all at the motion to dismiss stage, at least when it is based on facts alleged in or reasonably inferable from the complaint." *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 774 (N.D. Ill. 2016); *see also Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661, 2016 WL 6834024, at *6 (S.D. Cal. Nov. 21, 2016) (patent "does not cover just any bifunctional molecule; its claims all require a bifunctional molecule with a specific structure"). This Court is entitled to construe claims at some level, if only to apply the plain meaning. Finding otherwise would eviscerate the requirement that a complaint "must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim." *Id*. at *5.

Second, Plaintiff argues that the Motion "improperly requires infringement-contention level detail in the Complaint." Opp'n 14. Plaintiff's hyperbolic argument lacks merit. *See Scripps Research Inst.*, 2016 WL 6834024, at *6 ("the Court's holding does not require a patentee to plead with the specificity required in its infringement contentions, which Plaintiff seems to suggest. . . . Plaintiff must simply provide sufficient factual allegations concerning how each limitation of the asserted claims is *plausibly* met by the accused products.") (emphasis in original).

Finally, Plaintiff argues that "a dispute as to infringement does not support granting a motion to dismiss." Opp'n 16. But contrary to Plaintiff's characterization, this Motion arises from Plaintiff's failure to plausibly allege direct infringement. Plaintiff's Opposition identifies no plausible allegation. Not only does it ignore one of the two Disputed Limitations raised by the Motion—never addressing "*via a portion of the working device immediately adjacent to the handle opening*"—it inexplicably addresses limitations on control of the *guide catheter* by "*some or all of three fingers*," that the Motion never contests. *Compare* Opp'n 17 ("As alleged in the Complaint . . . the Relieva Devices contain a handle structure and a guide catheter, which can be controlled by some or all of three fingers of a hand, including a thumb and index finger."), *with* Mot. 13

8

(Disputed Limitations relate to control of the *working device*, not the *guide catheter*). For this reason alone dismissal is warranted.

In addressing the limitation that requires the "*thumb and index finger of the hand to manipulate the working device,*" the Complaint relies on the Wire Spinner, Wire Slider (both of which control the guide wire with sinus illumination working device), and Balloon Slider (which controls the balloon catheter working device). *See* Mot. 14-16 (summarizing elements of Accused Products relevant to infringement allegations). However, the Opposition concedes Acclarent's arguments as to the Wire Spinner and Wire Slider, responding only that the Balloon Slider "is never described as 'available only to the thumb.'" Opp'n 17. In other words, of the two working devices in the Accused Products, Plaintiff now argues only that the balloon catheter working device meets this limitation. But the Acclarent materials cited by the Complaint show manipulation of the balloon catheter only by using the thumb alone on the Balloon Slider. Compl. 27, 49. And more importantly, Plaintiff's argument improperly places the burden on Acclarent to prove a negative. Manipulation of the balloon catheter with a "*thumb and index finger of the hand*" is a prerequisite to direct infringement, and Plaintiff has the burden to plausibly allege this in the Complaint, a burden that Plaintiff has not carried.

Plaintiff continues by arguing that "the Balloon Slider can be manipulated by the thumb *or* index finger." Opp'n 17 (emphasis in original). But Plaintiff's wording betrays two flaws in his argument. First, the mere fact that the Balloon Slider "can be" manipulated in a certain way is insufficient as a matter of law, given that none of the relevant limitations are phrased in terms of capability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("facts that are 'merely consistent with' a defendant's liability" fall short of plausibility); *Atlas IP*, 189 F. Supp. 3d at 774 ("a product's being 'reasonably capable' of an infringing configuration does not of itself infringe the patent").

9

Second, Plaintiff's argument improperly substitutes "*or*" for "*and*" from the limitation "*thumb and index finger of the hand*." Thus, the Complaint does not plausibly allege manipulation of the balloon catheter by both the thumb *and* index finger, as required by the limitation's plain language.

## V. Plaintiff fails to state a claim for indirect infringement

As explained in Acclarent's Brief in support of its Motion, the indirect infringement claim should fall with the direct infringement claim. Mot. 21-22; *see also Scripps Research Inst.*, 2016 WL 6834024, at *7. Also, because Acclarent's marketing and other materials only instruct users to manipulate working devices using their thumbs, never the thumb and index finger, and never "*via a portion of the working device immediately adjacent to the handle opening*," Plaintiff has not plausibly alleged an act of inducement and the Complaint shows only a substantial noninfringing use that would bar contributory infringement.

## VI. Plaintiff's request for leave to amend should be denied

Leave to amend pleadings "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992). An "amended complaint may only allege other facts consistent with" the original Complaint. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990). Leave may be denied where amendment would be futile. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004).

Given the volume of facts in the Complaint supporting Acclarent's statute of limitations and non-infringement defenses, any attempt by Plaintiff to revive them without contradicting the Complaint would be futile. And Plaintiff has offered no basis to believe otherwise—indeed, the Opposition emphasizes the thoroughness of Plaintiff's defective patent allegations. *See* Opp'n 18-19 (describing the efforts of Plaintiff's patent infringement allegations).

Dated:  February 27, 2017

Respectfully submitted,

**COUNSEL FOR DEFENDANT**

/s/  Tracey B. Davies
William B. Dawson
TX State Bar No. 05606300
wdawson@gibsondunn.com
Tracey B. Davies
TX State Bar No. 24001858
tdavies@gibsondunn.com
Andrew Lin
TX State Bar No. 24092702
alin@gibsondunn.com
GIBSON DUNN & CRUTCHER, LLP
2100 McKinney Ave, Suite 1100
Dallas, Texas  75201
Telephone:  214.698.3100
Facsimile:  214.571.2900

William C. Rooklidge,
CA State Bar No. 134483
wrooklidge@gibsondunn.com
Frank P. Cote
CA State Bar No. 204529
fcote@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, California  92612
Telephone:  949.451.3800
Facsimile:  949.451.4220

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2017, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's ECF system.

/s/ Tracey B. Davies
Tracey B. Davies