IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. FORD ALBRITTON, IV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:16-cv-03340-M |
| | § | |
| ACCLARENT, INC., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are (1) a Motion to Dismiss Plaintiff's First Amended Complaint [ECF #26], and (2) a Motion for Leave to File a Supplemental Exhibit in Support of Motion to Dismiss [ECF #40], both filed by Defendant Acclarent, Inc. ("Acclarent"). For the following reasons, the Motion for Leave to File a Supplemental Exhibit is DENIED, and the Motion to Dismiss is DENIED in part, and GRANTED in part.

### Background

The First Amended Complaint ("FAC"), which is the live pleading in this action and the subject of Acclarent's Motion to Dismiss, alleges Plaintiff Dr. Ford Albritton, IV ("Dr. Albritton") is a prominent ENT surgeon and an innovator in the field of nasal and sinus surgery. FAC, ¶14. Acclarent is a medical device company that sells, among other things, balloon sinuplasty devices, including the Relieva Spin® and SpinPlus® devices. *Id*., ¶¶8, 15. In 2006, Dr. Albritton allegedly began working to develop a novel, surgical catheter device that could be operated with a single hand. *Id*., ¶15. Acclarent allegedly learned of this invention and contacted Dr. Albritton in 2007 to express interest in working with him to further develop the single-handed surgical catheter and other medical devices. *Id*., ¶15. On June 12, 2007, Dr. Albritton and

1

Acclarent executed a Mutual Non-Disclosure Agreement ("NDA") to facilitate the sharing of confidential information while the parties explored possible business opportunities of mutual benefit. *Id.*, ¶16; *see also id.*, Ex. A. In 2008, the parties negotiated and signed a consulting services agreement ("Consulting Agreement"), pursuant to which Dr. Albritton provided advice and guidance to Acclarent employees on modifications and improvements to several Acclarent products. *Id.*, ¶¶25-27; *see also id.*, Ex. F.

By this lawsuit, Dr. Albritton alleges that Acclarent breached the NDA and the Consulting Agreement (1) by using his confidential information to develop Acclarent's Relieva Spin ® and SpinPlus ® devices; (2) by incorporating Dr. Albritton's pre-existing intellectual property into the patent applications that eventually issued as U.S. Patent No. 8,414,473 ("the '473 patent"); (3) by failing to identify Dr. Albritton as a co-inventor of the technology claimed in the '473 Patent; and (4) by failing to assign Dr. Albritton all right, title, and interest in the '473 Patent. Dr. Albritton further alleges that Acclarent fraudulently induced him to sign both the NDA and the Consulting Agreement and that Acclarent committed fraud because Acclarent secretly used Dr. Albritton's confidential information for its own purposes, including filing for patent protection for its own benefit. Finally, Dr. Albritton alleges that Acclarent directly and indirectly infringes his patent, U.S. Patent No. 9,011,412 ("the '412 patent"), by making and selling the Acclarent Relieva devices, including the Relieva Spin® and the SpinPlus®.

Acclarent moves to dismiss on limitations grounds Dr. Albritton's common law claims for breach of the NDA, breach of the Consulting Agreement, fraudulent inducement, and fraud. Acclarent further argues that Dr. Albritton's claims regarding breach and fraudulent inducement of the NDA should be dismissed because the NDA fails to protect the allegedly misused information and because the FAC fails to identify with sufficient particularity the conduct that

allegedly induced Dr. Albritton to sign the NDA. Finally, Acclarent argues that the FAC establishes that the Acclarent Relieva devices do not infringe the '412 patent.

Dr. Albritton responds that his common law claims are not barred by the statute of limitations because he adequately pleaded that Acclarent fraudulently concealed information that would trigger the statute of limitations and that his fraudulent inducement and patent infringement allegations are sufficient to state a claim for relief.

The Court held a hearing on Acclarent's Motion to Dismiss on October 24, 2017, and the parties filed supplemental briefs directed to various limitations issues. On November 9, 2017, Acclarent filed a Motion for Leave to File pleadings submitted to the Patent Trial and Appeal Board ("PTAB") in support of its Motion to Dismiss. The issues have now been fully briefed and argued, and both Motions are ripe for determination.

**Legal Standards**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must have pled "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court will not, however "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." G*reat Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010).

A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex. 2011) (Lynn, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 423 (5th Cir. 2013) (quoting *Highland Capital Mgmt., L.P. v. Bank of Am., Nat'l Ass'n*, 698 F.3d 202, 205 (5th Cir. 2012)). "Plausible" does not mean "probable," but it asks for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claims sounding in fraud must also satisfy the heightened pleading standard set out in Fed. R. Civ. P. 9(b), which requires a party "alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (internal citation omitted). The Fifth Circuit has interpreted Rule 9(b) to require, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal citation and quotation marks omitted). However, the Fifth Circuit has also stated that the "time, place, contents, and identity standard is not a straitjacket for Rule 9(b)," concluding that Rule 9(b) is context-specific and flexible. *Grubbs*, 565 F.3d at 185.

**Preliminary Matters**

As a preliminary matter, Acclarent seeks leave to submit a copy of Dr. Albritton's response to Acclarent's petition for *inter partes* review ("IPR") of the '412 patent, for the Court's consideration in connection with Acclarent's Motion to Dismiss Dr. Albritton's patent infringement claims. Acclarent contends the IPR Response filed with the PTAB is relevant to (1) the claim construction proposed by Dr. Albritton and (2) a hypothetical question posed by the

Court at the October 24, 2017, hearing regarding "creative" use. More specifically, Acclarent argues Dr. Albritton's assertion at the hearing that the '412 patent is infringed if the Relieva devices are "capable of" manipulation of a working device with a thumb and forefinger is inconsistent with his position in the PTAB proceeding that the '412 patent covers only products that are "configured to" or "designed to" permit, and not merely "capable of" permitting, manipulation of the working device with both the thumb and index finger.

Dr. Albritton argues that Acclarent's request should be denied because it is procedurally improper and substantively incorrect. Dr. Albritton contends that his arguments to this Court and the PTAB are consistent and that Acclarent improperly conflates the concepts of inherent anticipation, express anticipation, and literal infringement to show inconsistency.

Acclarent's Motion is DENIED, and the Court will not consider Dr. Albritton's PTAB submission in the context of the pending Motion to Dismiss. The proffered material is not part of the FAC, and thus is outside of the scope of the pleadings the Court considers under Fed. R. Civ. P. 12(b)(6). *See Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (explaining that district court must not go outside the pleadings in determining whether to grant a motion to dismiss). As explained below, the Court declines to consider any claim construction arguments or resolve any disputed issue of fact at this stage in the litigation.

### Patent Claims

### Direct Infringement

Acclarent argues Dr. Albritton's claims for direct patent infringement must be dismissed because the FAC does not plausibly allege that Acclarent's Relieva devices infringe the '412 patent. More particularly, Acclarent argues that the '412 patent claims all require any infringing product to be used to manipulate a "working device" (1) with "a thumb and index finger of the

5

hand" (2) "via a portion of the working device immediately adjacent to the handle opening," but the FAC does not plausibly allege the Relieva devices practice these limitations. According to Acclarent, the FAC fails to plausibly allege that someone using a Relieva device uses the thumb *and index finger* to manipulate the working device portion of the invention. Instead, Acclarent argues, its own marketing materials, which Dr. Albritton incorporated into the FAC as illustrations, establish that *only the thumb*—and not the index finger—controls the working device. Acclarent further argues that the FAC shows that the Relieva devices do not permit the user "to manipulate the working device via a portion of the working device immediately adjacent to the handle opening," because the Relieva devices interpose implements (the Balloon Slider, Wire Spinner, and Wire Slider) that slide in a track between the working device and the user's thumb and forefinger.

The FAC alleges, in pertinent part:

> The structure of the Relieva Devices' handle is adapted to permit the operator to position a thumb and index finger of the hand to manipulate the working device via a portion of the working device immediately adjacent to the handle opening. For example, the Relieva Spin marketing literature describes the "Balloon Slider" and "Wire Spinner and Wire Slider," as depicted below. Similarly, the Relieva SpinPlus marketing literature describes an independent "Balloon Slider" that allows for precise control of the balloon catheter, and "Wire Spinner and Wire Slider," described as "[an] [e]longated tactile thumb wheel to easily gain thumb purchase and navigate sinus anatomy."

> The Balloon Slider, Wire Spinner, and Wire Slider of the Relieva Devices are manipulated by the operator's thumb, the operator's forefinger, and the operator's thumb and index finger (simultaneously). Moreover, even when an operator uses the thumb (as advertised) to manipulate the Balloon Slider or the Wire Slider, the operator also uses his or her forefinger to apply oppositional force and stabilizing force that is part of the manipulation of the working device as illustrated below.

> The use of the thumb and other finger(s) to manipulate the working device (including the Wire Slider) is further described in the Relieva SpinPlus instructions for use:
>
>> The Handle features a Wire Slider, a Wire Spinner, a Balloon Slider, a Sinus Balloon, Handle Markers, and proximal connections. The Wire Slider allows the user to advance, retract and spin the Sinus Illumination System with a single hand while simultaneously supporting the Handle. The Balloon Slider allows the user to advance and retract the Sinus Balloon Catheter (shown in Figure 2).
>
> The "Balloon Slider" and "Wire Spinner and Wire Slider," are examples of a portion of the working device immediately adjacent to the handle opening. The Balloon Slider, Wire Spinner, and Wire Slider all travel along and abut an opening in the handle as depicted [in incorporated marketing materials.]

FAC ¶¶121-24. Even after *Twombly* and *Iqbal*, a complaint is sufficient if it places the alleged infringer on notice of the specific activity that is being accused of infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017); *see also K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284-87 (Fed. Cir. 2013) (holding that complaint survives Rule 12(b)(6) challenge when it gives notice of what patentee accuses of being an infringing act with reasonable inferences that such acts are being done). The facts set forth above are sufficient to give Acclarent notice that Dr. Albritton contends the Relieva devices allegedly can be manipulated with a thumb and index finger, in a manner that infringes the '412 patent. The Court thus determines the FAC states a plausible claim for direct infringement.

Acclarent argues the marketing materials incorporated into the FAC fail to establish infringement because they contradict Dr. Albritton's succinct written allegations and depict the Relieva Spin® and SpinPlus® as being operated with a thumb only. However, Dr. Albritton's infringement claims are not limited to the examples of the Relieva devices as depicted in the FAC. Rather, the marketing materials are merely demonstrative. Dr. Albritton also brought a

7

sample Relieva device to the hearing on October 24, 2017, as a demonstrative aid to show how the accused device can be adapted to allow for direct manipulation by both a thumb and forefinger, and thus show infringement. The Court is not basing its decision on any particular example or demonstration. Rather, the Court's decision is strictly limited to the allegations set forth in the FAC, which plausible allege facts sufficient to infer that the Relieva devices can be adapted to infringement. To the extent Acclarent argues that Dr. Albritton has misconstrued any patent claim terms or that its Relieva devices actually do not infringe, the Court declines to consider any claim construction arguments or resolve any disputed issue of fact on an underdeveloped record at this stage in the litigation.

In the context of Acclarent's Motion to Dismiss, the question is merely whether Dr. Albritton's claim is plausible in light of the allegations of the FAC, which must be accepted as true. In view of this standard and the allegations of the FAC, the Court determines that Dr. Albritton has alleged a plausible claim that Acclarent's Relieva devices infringe the '412 patent. Accordingly, Acclarent's Motion to Dismiss is DENIED with respect to Dr. Albritton's claims for direct infringement.

## Indirect Infringement

Dr. Albritton also asserts claims against Acclarent for indirect infringement. Specifically, Dr. Albritton claims Acclarent both induces infringement and contributes to infringement through the provision of marketing materials that cause health care professionals to use the Relieva devices in a manner that infringes the '412 patent. Acclarent argues Dr. Albritton's claims for induced infringement must be dismissed because the FAC does not plead a plausible claim for direct infringement, and because Acclarent's marketing materials do not instruct users to manipulate the working devices on the Relieva devices with their thumbs and forefingers, in a

manner that infringes the '412 patent. Acclarent further argues that Dr. Albritton's claim for indirect infringement must be dismissed because the FAC reveals a substantial non-infringing use that bars contributory infringement.

For Dr. Albritton's induced infringement claim to survive Acclarent's Motion to Dismiss, the FAC must plead facts plausibly showing that Acclarent "specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *See Trim-Lok*, 869 F.3d at 1381 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). With respect to Acclarent's argument that Dr. Albritton's claims for indirect infringement fail because he failed to state a claim for direct infringement, the Court determines, for the reasons already discussed, that the FAC alleges sufficient facts to state a claim for direct infringement. The Court further determines that, viewing the facts in a light most favorable to Dr. Albritton, the FAC alleges Acclarent's marketing materials instruct health care professionals to operate the Relieva devices with their thumb and forefinger, in a manner that could infringe the '412 patent. This allegation is sufficient to satisfy the requirement that Dr. Albritton allege Acclarent specifically intended health care providers to infringe the '412 patent and knew that those provider's use of the Relieva devices, consistent with Acclarent's instructions, constituted infringement.

The Court does not accept Acclarent's assertion that "the threshold for establishing a plausible inference of intent to induce infringement should be especially high" in this case because the FAC also contains information that shows users could operate the Relieva devices in a non-infringing manner, *i.e.*, with their thumbs alone. The case Acclarent relies on for authority, *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009), does not establish a heightened pleading standard for allegations of induced infringement. Rather, *Vita-Mix* stands

for the proposition that a court may appropriately grant summary judgment if the plaintiff comes forward with no evidence of intent, other than evidence that the defendant has actual knowledge that some uses of its product may result in infringement. *Vita-Mix*, 581 F.3d at 1329. Acclarent's Motion to Dismiss is DENIED with respect to Dr. Albritton's claims for induced infringement.

The Court comes to the opposite conclusion with respect to Dr. Albritton's claims for contributory infringement. A party contributorily infringes a patent if: (1) it sells or offers to sell a material or apparatus for use in practicing a patented process; (2) that is material to practicing the invention; (3) which has no substantial non-infringing uses; (4) and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c)). To survive a motion to dismiss, a plaintiff must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Id*. A substantial non-infringing use is one that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix*, 581 F.3d at 1327-29. The relevant inquiry is "whether the accused products can be used for purposes other than infringement." *Bill of Lading*, 681 F.3d at 1338. Although the FAC recites the Relieva devices have no substantial non-infringing uses, *see* FAC ¶¶ 150, 151, 154, the FAC also incorporates Acclarent marketing materials that show the Relieva devices have a non-infringing use, in that the materials depict users manipulating the working device using their thumbs alone. Because the FAC contains information that the Relieva devices can have non-infringing uses, the Court concludes that Dr. Albritton has not stated a claim for contributory infringement against Acclarent. *See Bill of Lading,* 681 F.3d at 1339 (affirming trial court's dismissal of claim for contributory patent infringement where allegations affirmatively established that accused

products could be used for substantial non-infringing purposes); S*onrai Systems, LLC v. AMCS Group Inc.*, 2017 WL 4281122, at *8 (N.D. Ill. 2017) (granting motion to dismiss contributory infringement claims where plaintiff's complaint revealed non-infringing uses). Accordingly, Dr. Albritton's claim for contributory infringement is DISMISSED.

## Statute of Limitations

### Choice of Law

Acclarent contends that Dr. Albritton's claims for breach of the NDA, breach of the Consulting Agreement, fraudulent inducement, and fraud are all barred by the applicable statutes of limitations. Although Acclarent originally argued, and Plaintiff agreed, that Texas limitations law applied to Dr. Albritton's claim for breach of the NDA, and California limitations law applied to his claim for breach of the Consulting Agreement, *see* Def. Br. [ECF #27] at 2 & 12, Acclarent argued at the October 24, 2017, hearing that Texas limitations law applies to Dr. Albritton's claim for breach of the Consulting Agreement. The Court therefore must determine, as a threshold matter, which State's law provides the applicable limitations.

The NDA and the Consulting Agreement each contain a choice of law provision. The NDA provides that Texas law governs the NDA, *see* FAC, Ex. A at 2; the Consulting Agreement states that California law governs the Agreement, *see id.*, Ex. F at ¶10.A. Both Texas and California have four-year statutes of limitations for breach of contract claims. *Compare* Tex. Civ. Prac. & Rem. Code §16.051 *with* Cal. Code Civ. P. §337. Texas law provides that a breach of contract claim accrues for limitations purposes when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). Under California law, a cause of action accrues "at the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo–Surgery, Inc.*, 110 P.3d 914, 920 (2005). The simple fact that a party has breached a contract—without

11

more—does not necessarily trigger the statute of limitations under California law. *See Buschman v. Anesthesia Business Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (collecting cases). Where monetary damages are an element of the offense, California courts have held that the cause of action does not accrue until the plaintiff suffers a pecuniary loss. *Id*. Because the FAC alleges that Dr. Albritton did not suffer a pecuniary loss immediately upon the initial breach, the accrual date for Dr. Albritton's claim for breach of the Consulting Agreement would be different depending on whether Texas or California law applies.

The Court determines that Texas limitations law applies to Dr. Albritton's claim for breach of the Consulting Agreement. A federal court exercising diversity jurisdiction or supplemental jurisdiction, which are the two bases for this Court's jurisdiction over Dr. Albritton's state law claims, "is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state." *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1103 (5th Cir. 1981). In Texas, where parties contractually agree to apply the law of another state, the courts apply the substantive law of the contractually-chosen state but apply the law of the forum state to matters of remedy and procedure. *Western-Southern Life Assurance Co. v. Kaleh*, 193 F.Supp.3d 756, 771 (S.D. Tex. 2016). Under Texas law, the statute of limitations is ordinarily a procedural issue. *Id.* Therefore, Texas limitations law applies to Dr. Albritton's claim for breach of the Consulting Agreement. Ultimately, however, this choice of law is not determinative of limitations issue, because the Court concludes the FAC survives dismissal, even under the more restrictive Texas standard.

## Analysis

The limitations period for each of Dr. Albritton's claims for breach of the NDA, breach of the Consulting Agreement, fraudulent inducement, and fraud is four years from when the cause of action accrues. *See* Tex. Civ. Prac. Rem. Code § 16.051 (providing four-year statute of limitation for contract claims); Tex. Civ. Prac. Rem. Code § 16.004(a)(4) (providing four-year statute of limitation for claims based on fraud). Dr. Albritton filed this case on December 1, 2016. Therefore, any claim that accrued before December 1, 2012 is barred by limitations, unless some exception to the statute of limitations applies.

Dr. Albritton invokes the fraudulent concealment exception to toll the statute of limitations in this case. Fraudulent concealment is an equitable doctrine which tolls the statute of limitations where a defendant conceals his unlawful conduct either by (1) failing to disclose his wrongful conduct when there is a duty to disclose, or (2) lying about his conduct. *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984) (quoting *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974)); *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983); *Arabian Shield Development Co. v. Hunt Oil Co.*, 808 S.W.2d 577, 584 (Tex. App.—Dallas 1991, writ denied). The fraudulent concealment doctrine requires that a plaintiff plead, and subsequently prove, that (1) the defendant had actual knowledge of the facts giving rise to the plaintiff's cause of action, (2) the defendant concealed its unlawful conduct, and (3) the plaintiff failed, despite reasonable diligence on his part, to discover the facts giving rise to his cause of action. *Tex. v. Allen Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988); *Timberlake*, 727 F.2d at 1366.

Although Acclarent's counsel acknowledged at the October 24, 2017, hearing that the question of whether a party exercised reasonable diligence is generally a fact issue, Acclarent

contends that the facts alleged in the FAC conclusively establish that Dr. Albritton did not exercise reasonable diligence. Specifically, the FAC alleges:

> On September 18, 2008, after meeting with Dr. Albritton and unknown to Dr. Albritton, Acclarent filed provisional Patent Application No. 61/098,157, which does not list Dr. Albritton as an inventor. Acclarent's provisional application misappropriates and incorporates the ideas Dr. Albritton shared with Acclarent under the protections of the NDA and the Consulting Agreement. The provisional Patent Application No. 61/098,157 eventually issued as U.S. Patent No. 8,414,473 ("the '473 patent").

FAC ¶30 (internal citations omitted). The PTO issued the '473 patent and published the patent application that claimed priority to the '157 application, on April 22, 2010. *See* Def. Mot., Ex. 1 at 4. Acclarent thus contends that Dr. Albritton should have known of the facts underlying his causes of action by April 22, 2010, at the latest, which is outside the statute of limitations. However, the FAC also alleges that Acclarent's employees told Dr. Albritton that Acclarent would not use Dr. Albritton's confidential information, that Dr. Albritton would be named a co-inventor if Acclarent pursued his ideas, and that Acclarent did not wish to pursue Dr. Albritton's concept because it was commercializing its own distinct device. *See* FAC ¶¶ 15, 16, 23, 28, 48, 50, 51, 52. The FAC further alleges that, contrary to Acclarent's representations, Acclarent filed a provisional patent application that included Dr. Albritton's ideas, without naming Dr. Albritton as an inventor, and then concealed the fact of that filing from Dr. Albritton. *Id.* ¶¶ 91, 94, 100.

The Court concludes that the FAC sets forth sufficient allegations to plead that Acclarent actively and fraudulently concealed its alleged misappropriation of Dr. Albritton's confidential information. Taking the FAC's allegations as true, as the Court must in the context of a motion to dismiss, Acclarent has not established as a matter of law that Dr. Albritton failed to act with reasonable diligence, such that his claims should be dismissed on limitations grounds. The allegations in the FAC are sufficient to invoke the exception to the statute of limitations at this

14

early stage in the litigation. It may be that, in another procedural context, after discovery, Acclarent can show that there is no question that Dr. Albritton failed to act with reasonable diligence, but for now his claims survive.

**Breach of the NDA**

Acclarent also argues that Dr. Albritton's claim for breach of the NDA fails because the NDA does not cover the allegedly misappropriated information. Acclarent focuses on the NDA's definition of "Confidential Information," which excludes "any information which . . . (ii) becomes publicly known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party." FAC, Ex. A at ¶1. The FAC alleges that Acclarent misappropriated information from, or that was otherwise reflected in, the provisional patent application that resulted in the '412 patent. FAC ¶¶ 32-37. Thus, the information that was reflected in the provisional application became publicly known and was made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party. That information would not qualify as Confidential Information under the NDA.

However, the FAC also alleges that Dr. Albritton's claim for breach of the NDA relates to confidential information on Dr. Albritton's tactile feedback mechanism that was not included in the '412 patent. FAC ¶68. To the extent the allegedly misappropriated information relates to the tactile feedback mechanism, that information is not excluded from the definition of Confidential Information under the NDA. Acclarent argues, however, that any misappropriation theory based on the tactile feedback mechanism fails because the FAC alleges that Dr. Albritton shared information about the tactile feedback mechanism with Acclarent's engineering team on June 11, 2008, which is five days after the Consulting Agreement took effect. The Consulting

Agreement contains an integration clause, providing that that Consulting Agreement "supersedes all prior written and oral agreements between the parties" – including the NDA. Acclarent contends that the NDA was not in effect on the date Dr. Albritton revealed the tactile feedback mechanism to Acclarent and, therefore, information about the tactile feedback mechanism cannot support a claim for breach of the NDA.

The FAC also alleges:

> *Between June 2007 and May 2008*, Dr. Albritton disclosed information related to his innovations, including (without limitation) the working prototypes of the single-handed guide and catheter device developed by Dr. Albritton, and later, a prototype containing Dr. Albritton's novel mechanism for providing improved tactile feedback to the surgeon through contact with the guidewire.

FAC ¶19 (emphasis added). This allegation plausibly states that the disclosure of information about the tactile feedback mechanism occurred prior to the June 6, 2008, effective date of the Consulting Agreement, when the NDA was still in effect. The inclusion of the word "later" does not preclude an inference that a protected disclosure occurred between May 2008 and June 6, 2008. Acclarent's Motion to Dismiss is DENIED with respect to Dr. Albritton's claim for breach of the NDA based on any disclosure of the tactile feedback mechanism that occurred prior to the June 6, 2008.

### Fraudulent Inducement of the NDA

Finally, Acclarent argues that the FAC fails to state a claim for fraudulent inducement of the NDA. Specifically, Acclarent challenges Dr. Albritton's allegation that Greg Garfield, an Acclarent employee, fraudulently induced Dr. Albritton to enter the NDA by "representing that Acclarent would not use his confidential information for any improper purpose." FAC ¶16. Acclarent characterizes this allegation as conclusory and contends that it fails to meet the

particularity standards of Rule 9(b) because it fails to identify the actual statement and state exactly when and where this statement was made.

Dr. Albritton argues that, in addition to the allegation highlighted by Acclarent, the FAC also alleges that Mr. Garfield expressed interest in working with Dr. Albritton in early 2007. FAC ¶15. Dr. Albritton then insisted to Mr. Garfield that they execute an NDA before Dr. Albritton shared his innovations. *Id*. ¶16. In response, Mr. Garfield agreed to enter the NDA, allegedly representing that Acclarent would not use his confidential information for any improper purpose. *Id*. ¶¶16, 91. The NDA was later executed on June 12, 2007. *Id*. ¶16. The FAC also alleges that Acclarent "intended to use the NDA to gain access to Dr. Albritton's inventions, so that Acclarent could incorporate the innovative features created by Dr. Albritton in its 'next generation Guide Catheter.'" *Id.* ¶90. This sufficiently pleads the required "who, what, when, and how" elements of a fraud claim.

Acclarent argues that Dr. Albritton's claim for fraudulent inducement fails because it is nothing more than a breach of contract claim masquerading as a fraud claim. Acclarent contends that a mere failure to perform a contract cannot be evidence of fraud. While Acclarent's assertion is a correct statement of the law, it is not a complete statement. Under Texas law, "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc*., 708 S.W.2d 432, 434 (Tex. 1986); *see also Formosa Plastics Corp. USA v. Presidio Engs. & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) (holding a promise of future performance can constitute an actionable misrepresentation, so long as the promise was made "with no intention of performing at the time it was made"). The FAC pleads facts that support a fraudulent intent not to perform, and thus states a claim for fraudulent inducement.

## Conclusion

For the reasons stated, the Court finds that Dr. Albritton's First Amended Complaint sets forth sufficient facts to survive dismissal on limitations grounds and to state claims for relief for breach of contract, direct patent infringement, and inducement of infringement. Accordingly, the Court DENIES Acclarent's Motion to Dismiss [ECF #26] with respect to these claims. The Court further finds that the First Amended Complaint incorporates Acclarent marketing materials that show the Relieva devices can have a non-infringing use. Accordingly, the Court GRANTS Acclarent's Motion to Dismiss with respect to Dr. Albritton's claim for contributory infringement and DISMISSES that claim with prejudice.

The Court DENIES Acclarent's Motion for Leave to File a Supplemental Exhibit in Support of Motion to Dismiss [ECF #40].

SO ORDERED.

Dated: December 27, 2017.

BARBARA M.G. LYNN
CHIEF JUDGE